UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCIS J. KEATING, JR.,
                         Plaintiff,

          -v-

AIR & LIQUID SYSTEMS
CORPORATION, et al.,
                         Defendants.

18-CV-12258 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Francis J. Keating, Jr., initiated this tort action against Defendant Aurora Pump Company ("Aurora") and thirty-one other companies in New York Supreme Court, New York County, on October 10, 2018. (Dkt. No. 1-1.) On December 27, 2018, Aurora filed a notice of removal pursuant to 28 U.S.C. § 1442(a)(1), which enables a defendant to remove to federal court a civil suit filed against it in state court for certain acts it has performed under the direction of an agency of the United States. (Dkt. No. 1.) Keating now moves to remand the action back to state court. (Dkt. No. 31.) For the reasons that follow, Keating's motion is denied.

**I.    Background**

      Plaintiff Francis J. Keating, Jr., filed this civil action in New York state court against a group of thirty-two companies, including Aurora, on October 10, 2018. (Dkt. No. 1-1 at 8–9.) According to his complaint, Keating has been diagnosed with lung cancer (Dkt. No. 1-1 at 9)—a diagnosis that, Keating suspects, stems from his occupational exposure to asbestos during his work as a machinist's mate in the United States Navy from 1953–1974 and as a refrigeration technician for Eastman Kodak and Motorola during the 1970s and 1980s (Dkt. No. 1-3 at 10–11, 37–38). In his answers to a standard set of interrogatories, Keating has identified several of the

1

defendants in this suit as the manufacturers of some of the asbestos-containing products that he encountered during his various employments. (Dkt. No. 1-3 at 37–38.)

Aurora answered Keating's complaint on October 24, 2018. (Dkt. No. 1-2.) But shortly thereafter, on November 16, 2018, Aurora sent a letter to Keating's counsel, requesting that Keating consent to the entry of summary judgment in Aurora's favor. (Dkt. No. 1-5.) According to the letter, the basis for Aurora's request was the fact that Keating had up to that point not specified in his discovery responses and deposition which offending equipment Aurora, as opposed to its codefendants, was alleged to have manufactured. (*Id.*) Keating's counsel, though, denied Aurora's request, explaining that identifying the Aurora products Keating encountered during his employment would require "ship ID discovery." (Dkt. No. 1-6.)

Meanwhile, two other defendants, CBS Corporation and Foster Wheeler LLC, removed this action to federal court on November 9, 2018, pursuant in part to the so-called federal officer removal statute, 28 U.S.C. § 1442(a)(1). *See Keating v. Air & Liquid Sys. Corp.*, No. 18 Civ. 10439 (S.D.N.Y.) ("*Keating I*"), Dkt. No. 1. The notice of removal, however, suffered from a filing error that the removing defendants failed to correct by the November 19, 2018 deadline. The Court therefore administratively closed the case on November 28, 2018, without prejudice to reopening within sixty days. *See Keating I*, Dkt. No. 7.

On December 27, 2018, a second notice of removal invoking the federal officer removal statute was filed, this time by Aurora. (Dkt. No. 1.) This notice of removal claimed that Aurora had realized its eligibility to invoke the statute only after the November 16, 2018 email from Keating's counsel had tied Keating's claims to equipment Aurora had manufactured "pursuant to contracts executed by the U.S. Navy and pursuant to U.S. Navy specifications." (Dkt. No. 1 ¶ 18; *see also id.* ¶ 13.) Because this case had already been in federal court at the time of the

2

email, Aurora had not acted on this realization right away. (*Id.* ¶ 13.) But, the notice of removal pointed out, Aurora had filed its notice within thirty days after the November 28, 2018 administrative closure of the federal case that had been opened by Aurora's codefendants. (Dkt. No. 1 ¶ 15.)

Keating believes that Aurora's notice of removal was untimely. (Dkt. No. 62 at 4–8.) Accordingly, on January 24, 2019, he filed a motion to remand this case back to state court. (Dkt. No. 31.) In addition, because Aurora supposedly had "no colorable basis for filing [its] notice of removal," Keating also seeks to recover the attorney's fees and costs he has incurred in preparing and filing his motion to remand. (Dkt. No. 62 at 9; *see also id.* at 8–10.) Aurora has opposed Keating's motion (Dkt. No. 58), and the Court is now prepared to rule.

**II.     Legal Standard**

A federal district court must remand a case that has been removed from state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Prop. Clerk v. Fyfe*, 197 F. Supp. 2d 39, 40–41 (S.D.N.Y. 2002) (quoting 28 U.S.C. § 1447(c)). And a district court has subject-matter jurisdiction over a removed case "only if the case could have been originally filed in federal court." *Beriguete v. Roosevelt Hosp. Envtl. Servs.*, No. 11 Civ. 3085, 2011 WL 6844529, at *2 (S.D.N.Y. Dec. 29, 2011) (quoting *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997)). In assessing whether a removing party has carried its burden of showing that the removed case satisfies this jurisdictional requirement, the Court "look[s] only to the jurisdictional facts alleged in the Notice[] of Removal" and "resolv[es] any doubts against removability." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.* ("*In re MTBE*"), 488 F.3d 112, 124 (2d Cir. 2007) (second quoting *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991)).

Where a removing defendant has successfully established that federal jurisdiction over a case is proper, it must then shoulder the additional burden of "demonstrating that the removal was" effected in a "procedurally proper" manner. *Gary v. City of New York*, No. 18 Civ. 5435, 2018 WL 5307096, at *2 (S.D.N.Y. Oct. 26, 2018). On this point, too, "all doubts as to the procedural validity of removal will be resolved in favor of remand." *Id.*

## III. Discussion

Although Keating's sole argument in favor of his motion to remand is that removal was untimely (*see* Dkt. No. 62 at 4–8), this Court has an independent obligation to ensure that this case is eligible for removal in the first place—*i.e.*, that it falls within the scope of the federal courts' subject-matter jurisdiction, *see In re MTBE*, 488 F.3d at 121–22. The Court thus begins with the question of subject-matter jurisdiction before considering whether removal was timely.

### A. Subject-Matter Jurisdiction

In removing this case, Aurora relied on 28 U.S.C. § 1442, the federal officer removal statute. (Dkt. No. 1 at 2.) Under that statute, a civil suit filed in state court against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office," may be removed by the defendant officer (or subordinate) to federal court. 28 U.S.C. § 1442(a)(1). A case removed under this statute falls within the federal courts' federal-question jurisdiction—even if the underlying claims sound in state law—as long as "the removing defendant (1) is a federal agency or officer, or acted under the direction of one; (2) has a colorable federal defense; and (3) can establish a causal connection between the conduct in question and the federal directive." *Donohue v. CBS Corp.*, No. 17 Civ. 7232, 2017 WL 5713222, at *2 (S.D.N.Y. Nov. 27, 2017); *see also Jefferson Cty. v. Acker*, 527 U.S. 423, 430–31 (1999).

4

Here, Aurora has alleged that it designed and manufactured the challenged equipment "in accordance with precise, detailed specification promulgated by the Navy Sea Systems Command" and that "all relevant aspects of the design and manufacture of the [equipment] were subject to close, detailed and ongoing supervision and control by the U.S. Navy and its officers." (Dkt. No. 1 ¶ 29.) And, Aurora further maintains, Navy specifications would have foreclosed it from placing asbestos-related warning labels on the equipment it manufactured or on any related documentation. (Dkt. No. 1 ¶ 28.) Aurora has thus alleged that it was working under the direction of a federal agency or officer at the time material to Keating's claims, and that its challenged actions—the manufacture of the equipment at issue, and the concomitant failure to warn—were causally linked to this federal control. *See Donohue*, 2017 WL 5713222, at *2–4 (concluding that manufacturers that had supplied asbestos-containing equipment to the U.S. Navy in accordance with the Navy's specifications had worked under the direction of the Navy and that the Navy's directives bore a causal nexus to an underlying products liability claim against the manufacturers).

The remaining question is whether Aurora has a colorable federal defense to Keating's claims. To satisfy this requirement, Aurora invokes the "government contractor defense." (Dkt. No. 1 ¶ 18.) That defense "shields contractors from liability under state tort law for defects in military equipment supplied to the United States when '(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.'" *Nesbiet v. Gen. Elec. Co.*, 399 F. Supp. 2d 205, 211 (S.D.N.Y. 2005) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988)); *see also Maguire v. A.C. & S., Inc.*, 73 F. Supp. 3d 323, 327 (S.D.N.Y. 2014) ("It is . . . well-settled

that a colorable federal government-contractor defense supplies a basis for removal in personal injury cases based on alleged exposure to asbestos."). And to be colorable, this asserted defense "need not be 'clearly sustainable,' as the purpose of the [federal officer removal] statute is to secure that the validity of the defense will be tried in federal court." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 139 (2d Cir. 2008) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

As noted, Aurora has alleged that it designed and manufactured the equipment at issue here pursuant to the U.S. Navy's detailed specifications. (Dkt. No. 1 ¶ 29.) And there is no reason on the present record to suppose that Aurora was privy to any asbestos-related hazards that the Navy itself was not. Courts in this Circuit regularly discern a colorable federal defense under like circumstances, *see, e.g.*, *Cuomo v. Crane Co.*, 771 F.3d 113, 115–17 (2d Cir. 2014); *Donohue*, 2017 WL 5713222, at *2–3; *Maguire*, 73 F. Supp. 3d at 327–28; *Perkins v. Air & Liquid Sys. Corp.*, No. 13 Civ. 08561, 2014 WL 1389750, at *1 (S.D.N.Y. Apr. 8, 2014); *Nesbiet*, 399 F. Supp. 2d at 211–12, and this Court has no reason to depart from those cases here.

Accordingly, the Court concludes, as Keating tacitly concedes, that this case falls within the scope of this Court's subject-matter jurisdiction.

**B.     Timeliness**

Rather than challenging this Court's jurisdiction over this action, Keating instead claims that remand is required because Aurora's notice of removal was untimely. (Dkt. No. 62 at 4–8.)

Under 28 U.S.C. § 1446, which governs the procedure for removing a civil action to federal court, a notice of removal typically must be filed within thirty days after the defendant receives the initial pleadings in the case or is served with a summons. 28 U.S.C. § 1446(b)(1). But in the event that "the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a

copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3).

The parties dispute where Aurora's notice of removal slots into this statutory framework. According to Aurora, "the case stated by [Keating's] initial pleading [was] not removable," *id.*, because the pleading nowhere specified that Aurora was being sued in connection with asbestos exposure during Keating's government employment, as opposed to his employment at Eastman Kodak or Motorola (*see* Dkt. No. 58 at 5–6). Thus, Aurora claims, it was not until a November 16, 2018 email from Keating's counsel first tied the claims against Aurora to Keating's service on "ships" (Dkt. No. 1-6) that Aurora could have discerned that it might have a federal defense (*see* Dkt. No. 58 at 4). But because the case had already been removed by CBS Corporation and Foster Wheeler LLC prior to the date of the email, *see Keating I*, Dkt. No. 1, Aurora maintains that the case was not "removable" on that date (Dkt. No. 58 at 9–11). Instead, Aurora believes that the statutory thirty-day removal window did not open until after it had received an "order or other paper" indicating that the case had again "become removable." 28 U.S.C. § 1446(b)(3). And that order, in Aurora's view, was the November 28, 2018 order that administratively closed the federal case initiated by the prior removal notice. (Dkt. No. 58 at 11.) Under this logic, Aurora's December 27, 2018 notice of removal met the statutory deadline.

Keating sees things differently. According to him, materials attached to the complaint Aurora received on October 15, 2018 "contain[ed] references to alleged [asbestos] exposure from [Keating's] duties on board United States Navy Ships at the Brooklyn Navy Yard between 1953 and 1974," placing Aurora on notice as to the removability of this case. (Dkt. No. 62 at 6.) Because "the case stated by [his] initial pleading" was thus supposedly removable, 28 U.S.C. § 1446(b)(3), Keating takes the position that Aurora had thirty days after its receipt of that

7

pleading to file its notice of removal, *see id.* § 1446(b)(1). No matter, Keating says, that the case was in fact removed within this timeframe, albeit by Aurora's codefendants. In Keating's view, Aurora was required to file its own notice of removal or "indicate in some fashion its consent to the removal filed by co-defendants" before the thirty-day period triggered by its receipt of Keating's pleading had elapsed. (Dkt. No. 62 at 7.)

The Court need not determine when the thirty-day statutory removal period was triggered. Even assuming, favorably to Keating, that "the case stated by the initial pleading" Aurora received on October 15, 2018, made clear that this case was removable, 28 U.S.C. § 1446(b)(3), the case was removed in a timely manner within thirty days when CBS Corporation and Foster Wheeler LLC filed their November 9, 2018 notice of removal, *see Keating I*, Dkt. No. 1. That notice of removal placed the entire case, including all claims against Aurora, in federal court. *See Gordon v. Air & Liquid Sys. Corp.*, 990 F. Supp. 2d 311, 314 n.1 (E.D.N.Y. 2014) (noting that "[a] single federal officer defendant may remove an entire action" pursuant to the federal officer removal statute). And once the case was in federal court, Aurora had no need to pile on with an extraneous notice of removal filed on its own behalf. *See Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976–77 (9th Cir. 2006) (per curiam) ("[T]he idea of filing a notice of removal in a case that is already pending in federal court, having been properly removed, is nonsensical."); *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996) ("[A] supplemental notice of removal would, if granted, have the effect of removing a case that has already been removed." (quoting *Nolan v. Boeing Co.*, 715 F. Supp. 152, 153 n.1 (E.D. La. 1989))).

The question, then, is whether anything that happened once the case had already been removed to federal court undid the timeliness of the case's initial removal. On the idiosyncratic facts of this case, the Court concludes that the answer is no.

Critically, the federal courts have not lost jurisdiction over this case at any point since CBS Corporation and Foster Wheeler LLC filed their timely notice of removal on November 9, 2018. That notice took effect immediately to "oust[] the state court of jurisdiction," *Rivas v. Bowling Green Assocs., L.P.*, No. 13 Civ 7812, 2014 WL 3694983, at *1 (S.D.N.Y. July 24, 2014), and once the state court had been divested of jurisdiction in this way, federal jurisdiction continued until, at the earliest, "[a] certified copy of the [federal court's] order of remand" was mailed to the clerk of the state court, 28 U.S.C. § 1447(c); *see also Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 312 (2d Cir. 2005) (noting that the federal removal statute "divests the district court of jurisdiction upon mailing of a remand order based on [certain] grounds to state court," but that "the mailing of the remand order to the state court does not strip the federal court of jurisdiction" under all circumstances (emphasis omitted)). Neither party has pointed to any indication that a remand order was ever entered, let alone mailed to the state court, following this case's initial removal to federal court.[1]

Of course, the initial, November 9, 2018 notice of removal suffered from a filing defect, which, as noted, led to the administrative closure of the federal case opened by that notice. *See Keating I*, Dkt. No. 7. One might argue, then, that the November 9, 2018 notice of removal was in essence a legal nullity that had no jurisdictional effect at all. *But see, e.g.*, *Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil*, No. 06 Civ. 5296, 2006 WL 2474869, at *1

---

[1] On November 12, 2018, CBS Corporation and Foster Wheeler LLC filed a proposed stipulation to withdraw their notice of removal. *Keating I*, Dkt. No. 5. However, the stipulation was never entered by the Court, and no party here suggests that it had any legal effect.

(S.D.N.Y. Aug. 28, 2006) ("Administrative closures do not terminate cases on the merits . . . ."). But whatever force that argument might otherwise have, the order closing the case opened by Aurora's codefendants explicitly left open the possibility that the filing error could be cured within sixty days. *See id.* The Court was entitled to take this approach. *See, e.g.*, *Dominguez v. Rogers*, No. 16 Civ. 6888, 2017 WL 3381894, at *4 (S.D.N.Y. Aug. 4, 2017) (allowing a removing party to correct a "technical defect" in a timely notice of removal after the thirty-day removal period had elapsed); *cf. Corley v. Spitzer*, No. 11 Civ. 9044, 2015 WL 127718, at *3 (S.D.N.Y. Jan. 7, 2015) ("Courts in the Southern District of New York routinely decline to consider motions to be untimely based on a failed [Electronic Case Filing system] filing . . . ."). And Aurora's effort to seek (or, more accurately, revive) the federal courts' consideration of this case—a case that, again, had already been removed in timely fashion—came within this sixty-day period and so was timely in itself.

It remains only for the Court to consider whether Aurora's efforts should be rebuffed merely because it "file[d] its own removal of this action under a new case number" (Dkt. No. 62 at 2) instead of filing an application to reopen the case that its codefendants had initiated, *see Keating I*, Dkt. No. 7 at 2 (directing a party "seek[ing] to reopen the case" within sixty days to "electronically fil[e] a Notice of Application to Reopen Case"). The Court sees no reason to elevate form over substance in this way. It is not, after all, entirely clear from the order closing the earlier-opened federal case what path *Aurora*—as opposed to CBS Corporation and Foster Wheeler LLC—was expected to follow if it wished to reopen that matter. In any event, had the preexisting federal action been successfully reopened, the effect would have been the case's random reassignment to another judge, *see id.*, which is exactly what Aurora achieved by filing a notice of removal under a fresh case number. To be sure, Aurora has also effectively achieved

10

an amendment of the original notice of removal. But although such an amendment is generally not allowed "[w]here the [originally filed] notice fails to state a proper basis for removal," *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205 (2d Cir. 2001), the original notice of removal in this case invoked essentially the same jurisdictional theory as did Aurora's later-filed notice. As the Court has already explained, *see supra* Section III.A., that theory is fully viable.

The procedural journey of this case has been anything but smooth. But on the unique set of facts before it, the Court concludes that this case was removed in a timely manner to federal court on November 9, 2018, and that nothing that has happened since has changed that fact. To the extent that Aurora should have styled its later-filed submission something other than a "notice of removal" or followed a different procedure for placing it before the Court, the Court overlooks any such technical errors in light of the unusual procedural posture in which Aurora found itself.[2]

## IV. Conclusion

For the foregoing reasons, Keating's motion to remand this action to state court is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 31. Keating is directed to serve a copy of this Opinion and Order on all defendants that have not yet entered an appearance under this federal case number and to file a copy of this Opinion and Order on his case's state-court docket on or before August 12, 2019. Any defendant that has not yet answered

---

[2] In addition to seeking remand, Keating also requests an award of the attorney's fees and costs he incurred in preparing and filing his motion to remand. (Dkt. No. 62 at 8–10.) Because the Court concludes that Keating is not entitled to "[a]n order remanding th[is] case," 28 U.S.C. § 1447(c), Keating's request for fees and costs is denied.

11

Keating's complaint shall answer or otherwise respond to the complaint within twenty-one days after service of this Opinion and Order.

SO ORDERED.

Dated: July 30, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge